[S. F. No. 14416. In Bank.—September 13, 1932.]

LAURA A. KELLY, as Trustee, etc., Plaintiff and Respondent, v. MARY T. DOLLARD et al., Defendants and Respondents; ANNIE A. SCANLON, Appellant.

W. H. Metson, F. A. O'Connell and Stanley Burke for Appellant.

Chalmer Munday for Plaintiff and Respondent.

Edwin H. Williams for Defendants and Respondents.

CURTIS, J.—This action was brought by the plaintiff against her brother and two sisters for a decree declaring that certain personal property in her possession was held by her in trust for herself and her said brother and sisters, and asking that distribution thereof be made in accordance with the terms of said trust. The defendant Annie A. Scanlon is sued not only in her individual capacity but as the administratrix of the estate of Annie A. Kelly, deceased. The parties to this action are the surviving children of the said Annie A. Kelly, deceased. The plaintiff was the youngest of the four children and lived with and cared for her mother up to the time of the death of the latter. The property of the alleged trust formerly belonged

to the said Annie A. Kelly. It consists of a deposit of money in a San Francisco bank in an amount slightly in excess of $14,000, and certain articles of jewelry, a shawl and a couple of watches. The mother died in January, 1930, and was ninety-one years of age at the time of her death. The plaintiff testified that "in July, she [the mother] delivered her jewelry, personal jewelry. She brought in a box and handed it to me and said, 'I want to give these to you in trust'. And she also had a paper, and on that paper she had stated exactly as she wanted it distributed. And she told me to put that in the safe deposit box with these papers, and keep it there until she died, and when she died to distribute it exactly as it was stipulated in the paper. . . . It was a diamond bar pin, an emerald and ruby bar pin, emerald earrings surrounded by diamonds, and a white crepe shawl, a gentleman's watch and a lady's watch." The paper referred to by the witness was admitted in evidence. It was dated July 26, 1919. The date, however, was placed thereon, according to plaintiff's evidence, by herself at the time it was given to her by her mother. The paper is as follows:

"San Francisco, July 26, 1919—I hereby give, grant, transfer and deliver to my daughter Annie A. Scanlon, my pair of emerald screw earrings, consisting of emeralds surrounded by diamonds, also one small diamond of my bar pin; the other small diamond of the same bar pin I give to my daughter Mary T. Dollard; and the large center diamond of the same bar pin, including the setting I give to my daughter, Laura A. Kelly. I give to my daughter Mary T. Dollard my bar pin consisting of rubies and emeralds, also my white crepe shawl. All the rest of my jewelry, watches, et cetera, I die possessed of, I bequeath to my daughter Laura A. Kelly.

"[Signed] ANNIE A. KELLY."

Plaintiff further testified that she took the box from her mother containing the jewelry and watches and deposited it in her safe deposit box and kept it there until the death of her mother. The crepe shawl was left in the house where the mother and plaintiff resided.

In regard to the money on deposit in the bank, the plaintiff stated that on January 1, 1926, as she was preparing to go to the bank to have the interest entered in the bank-book,

her mother said to her: "Well, now, I have disposed of the jewelry and the real estate by gift deed, now I want to arrange about this money. I will not draw any more from the bank account unless it is absolutely necessary, and if anything happens to me this will pay the sickness or funeral expenses when I die, and the residue in that book—what is left in it, should be divided share and share alike amongst the four children." To this statement by her mother the plaintiff replied: "Very well, I will do that." The bank account referred to is the one involved herein. It then stood, and for some years prior thereto had stood, in the name of the plaintiff. After this date it remained in plaintiff's name until her mother's death. Nothing was drawn from this account during that period except that on or about February 17, 1927, the plaintiff, at the request of her mother, drew $1,000 therefrom, and loaned it to Mrs. Scanlon, who gave her note for that amount, made out in favor of the plaintiff. On the death of the mother the plaintiff called together her brother and two sisters and explained fully to them the disposition the mother had made of the bank deposit and the jewelry. All appeared satisfied with the arrangement their mother had made concerning the disposition of her property, and appeared to acquiesce therein. A few days thereafter Mrs. Scanlon made objections to her mother's plan of disposing of her property, had herself appointed administratrix of her mother's estate, and instituted proceedings to compel the plaintiff to account for said property in the probate court. Thereupon the plaintiff instituted this action for the purpose of having a trust declared and the property distributed according to its terms. Mrs. Scanlon, her brother, Chester A. Kelly, and her sister, Mary T. Dollard, were all made defendants herein. Mr. Kelly and Mrs. Dollard appeared in the action and by answer joined with the plaintiff in asking the court to sustain their mother's plan of disposing of said property and to decree distribution thereof in accordance with said plan. Mrs. Scanlon, however, individually and as administratrix of her mother's estate, answered plaintiff's complaint, and denied that her mother had made any transfer of said property, or any part thereof in trust, or otherwise, to the plaintiff, and asked for a decree of court compelling plaintiff to turn over and deliver all of

said property to her as administratrix. Upon the trial the court found upon all issues in favor of the plaintiff, and entered a decree in plaintiff's favor as prayed for in. her complaint. From this decree the defendant Scanlon has appealed. Her sole contention is that the findings are not supported by the evidence, and particularly that the evidence does not justify or warrant the finding that a trust has been created.

In the first place, the record before us does not show any evidence directly contradicting that given by the plaintiff and recited above. No person, other than the plaintiff and her mother, was present on the occasions when the conversations which we have detailed were had between the mother and daughter. There is some slight evidence on defendant Scanlon's part that the mother was seen wearing some of said jewelry after the time plaintiff testified that it had been given into her keeping. This was satisfactorily explained by plaintiff, and as the trial court accepted her explanation the matter is not one of concern to this court. Regarding the bank deposit, no attempt was made at the trial to show that the facts regarding its disposition were any different than as testified to by plaintiff.

The evidence, in our opinion, was beyond doubt sufficient to sustain the finding that the property in controversy was conveyed to the plaintiff in trust, both as to the jewelry and other property delivered to the plaintiff on July 26, 1919, and the bank deposit later transferred to the plaintiff. The evidence shows that the mother during the latter years of her life owned other property, both real and personal. This property she had divided among her children by gift deeds and other like conveyances. She was somewhat fearful of wills, and evidently decided to make final disposition of her property by other methods. The box containing the jewelry and watches was delivered to the plaintiff to place the same in a safe deposit box and to distribute them in accordance with certain instructions, which were also in the box. These written instructions plainly indicate that the property was to be distributed on the death of Mrs. Kelly. These instructions speak for themselves, and it is not necessary for us to specify the particular words or language contained therein indicating such intention. Appellant concedes this by her claim that they express a testamentary

intention rather than a direction that the trustees make distribution of the property mentioned. There might be some merit in this claim if we consider the writing alone, but when taken in connection with the act and conduct of Mrs. Kelly in delivering the property described therein to her daughter with directions to hold and then to distribute it in accordance with the writing, the transaction as a whole possesses all the elements of a voluntary trust in personal property. (Civ. Code, secs. 2221, 2222.) ■ The question is raised as to whether the crepe shawl ever passed out of the possession of Mrs. Kelly and into the possession of the plaintiff prior to the death of Mrs. Kelly. The trial court held that it did. Whether the trial court was warranted in so holding or whether it was not, this court would hardly be justified in disturbing the decree in this case for any such error, if any error were made.

■ Passing on to the bank deposit, which is by far, in point of monetary value, the principal and most substantial portion of the property involved, we find the evidence equally conclusive. This deposit had been placed by Mrs. Kelly in plaintiff's name some time in 1922, where it remained until Mrs. Kelly's death. It was designated as "Laura A. Kelly, Special." It was in this condition, in the possession of Laura A. Kelly on January 1, 1926, when her mother gave directions regarding its final disposition, which were that after the payment of certain expenses, including her funeral expenses, the residue was to "be divided share and share alike amongst the four children". Under the decisions of this state, the acts of the parties above cited were sufficient to create a trust in the money deposited in the name of "Laura A. Kelly, Special." (*Hellman* v. *McWilliams,* 70 Cal. 449 [11 Pac. 659]; *Booth* v. *Oakland Bank of Savings,* 122 Cal. 19 [54 Pac. 370]; *Thomas* v. *Lamb,* 11 Cal. App. 717 [106 Pac. 254].) The fact that in 1927, under the directions of Mrs. Kelly, the plaintiff drew $1,000 from this fund did not alter the trust character of the balance remaining in the account. (*Hellman* v. *McWilliams, supra.*)

The judgment and decree is affirmed.

Preston, J., Seawell, J., Tyler, J., *pro tem.,* Waste, C. J., and Shenk, J., concurred.

Rehearing denied.